IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| LUCAS DYKE, Individually, and on Behalf of All Others Similarly Situated, | | |
| Plaintiffs, | No. 3:11-cv-03029-JAJ | |
| vs. | | |
| HORMEL FOODS CORPORATION and PETER VONRUDEN, Individually, | **ORDER** | |
| Defendants. | | |

_____

## I.  PROCEDURAL HISTORY

Plaintiffs filed their lawsuit in the Iowa District Court in and for Kossuth County on April 28, 2011.  Plaintiffs' lawsuit contains one count, alleging a violation of the Iowa Wage Payment Law ("IWPCL").  Defendants removed plaintiffs lawsuit to this court on June 1, 2011.  This matter now comes before the court pursuant to defendants' June 24, 2011 motion to dismiss [dkt. 7].  Plaintiffs resisted defendants' motion on July 21, 2011 [dkt. 11], to which defendants replied on August 5, 2011 [dkt. 14].  Plaintiff's filed supplemental authority in support of their resistance on September 22, 2011 [dkt. 18].


## II.  SUMMARY OF THE ARGUMENTS

Defendants move, pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiffs' lawsuit with prejudice, arguing that plaintiffs' petition fails to meet the pleading standards articulated by the Supreme Court in Twombly and Iqbal.  Alternatively, defendants argue that plaintiffs' lawsuit should be dismissed because it is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Plaintiffs argue that their lawsuit should not be dismissed as their lawsuit adequately

and plainly alleged that he and other meat processors routinely worked in excess of 40 hours per week by performing necessary work before and after their scheduled shift without proper overtime pay. Plaintiffs further allege that defendants subjected plaintiffs and other similarly situated employees to a common policy or practice of failing to pay an overtime premium for all time worked in excess of 40 hours in given workweeks. Plaintiffs argue that their claim is not preempted by the LMRA as interpretation of the collective bargaining agreement ("CBA") in place is not necessary to resolve their claim. In reply, defendants reply that plaintiffs' donning and doffing claims do require interpretation and application of the CBA, as 29 U.S.C. § 203(o) specifically excludes time "changing clothes" from compensable "hours worked," if such time is excluded "by custom or practice or under a bona fide collective-bargaining agreement."

## III.  MOTION TO DISMISS

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." The court may only consider matters within the pleadings. Moble Sys. Corp. v. Alorica Cent., L.L.C., 543 F.3d 978, 982 (8th Cir. 2008). To survive a 12(b)(6) motion, the claim "may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). The complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)); Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 716 (8th Cir. 2011) (quoting Northstar Indus., Inc. v. Merrill Lynch & Co., 576 F.3d 827, 832 (8th Cir. 2009)). While not a "probability requirement," the "plausibility standard requires a plaintiff to show at the pleading stage that success on

the merits is more than a 'sheer possibility.'" *Id.* To adequately state a claim, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010) (citing C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347, 591 F.3d 624, 629-30 (8th Cir. 2010)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555).

When analyzing the adequacy of a complaint's allegations under Rule 12(b)(6), the court must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff. See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002); Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" (citations omitted)). "The issue is not whether plaintiffs will ultimately prevail, but rather whether they are entitled to offer evidence in support of their claims." United States v. Aceto Agr. Chemicals Corp., 872 F.2d 1373, 1376 (8th Cir. 1989) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984) (quotation marks omitted)).

Further, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 588 F.3d at 594 (citations omitted). "Ultimately, evaluation of a complaint upon a motion to dismiss 'is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (citing Iqbal, 129 S. Ct. at 1950).

Plaintiff's lawsuit alleges:

- Plaintiffs are individuals who were employed by Defendants as food/meat processors or other similarly titled positions during the statutory period. Plaintiffs all shared similar job titles, pay plans, job descriptions, job duties, uniforms and hours of work amongst other things.

- Defendants managed Plaintiffs' work, including the amount of time they worked and how their time was recorded. Defendants dictated, controlled and ratified the wage and hour policies and practices challenged in this action.

- Plaintiffs were classified by Defendants as non-exempt under Iowa state wage and hour laws and paid an hourly rate. Upon information and belief, Plaintiffs' hourly rate ranged between $11.65 and $13.45 per hour.

- Defendants required, suffered and permitted Plaintiffs to regularly work more than 40 hours per workweek without proper overtime compensation. Plaintiffs routinely worked unpaid time by working before the start of their scheduled shifts, and working after the end of their scheduled shifts.

- Defendants required, suffered and permitted Plaintiffs to regularly work without proper straight time compensation in violation of the minimum age requirements of Iowa law. Iowa Code § 91D.1(b).

- Defendants failed to accurately record all time worked by their employees. Rather, Defendants willfully required, suffered and permitted their employees to perform tasks and work additional straight time, and overtime, while off-the-clock.

- Defendants knew and were aware at all times that their employees routinely worked more than their scheduled time and/or more than 40 hours per workweek. Nonetheless, Defendants typically paid Plaintiffs only for their scheduled time and not all their actual time worked, including straight time

and overtime.

- Defendants' practices violated the provisions of the Iowa Wage Payment Statute, Iowa Code §§ 91A, *et seq*. As a result of Defendants' unlawful practice, the Defendants benefitted from reduced labor and payroll costs.

- Plaintiffs were all subject to Defendants' uniform policies and practices and were victims of Defendants' schemes to deprive them of straight time and overtime compensation. As a result of Defendants' improper and willful failure to pay Plaintiffs in accordance with the requirements of the Iowa Wage Payment Statute, Plaintiffs suffered lost wages and other damages.

See Dkt. 1-1, p. 2-3, ¶¶ 7-15.

While plaintiffs' lawsuit fails to specifically include "donning" and "doffing" in their complaint, it does allege that defendants required, suffered and permitted plaintiffs to regularly work more than 40 hours per workweek without paying overtime compensation, as required by the IWPCL. Plaintiffs further allege that the "work" at issue occurred before the start of and after the end of the shift. Plaintiffs' lawsuit has pleaded sufficient facts which, if accepted as true, have stated a claim to relief that is plausible on its face. The factual allegations rise above the speculative level and demonstrate that success on the merits is more than a mere possibility. Defendants' motion to dismiss pursuant to Rule 12(b)(6) is denied.

**B. Preemption**

Section 301 of the LMRA states: "Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . ." 29 U.S.C. § 185(a).

Section 301 of the LMRA "expresses a congressional policy that federal labor law should govern § 301 disputes." Vacca v. Viacom Broadcasting of Missouri, Inc., 875

F.2d 1337, 1341 (8th Cir. 1989).  "It is a mandate to the federal courts to establish a federal common law to govern disputes arising out of labor contracts."  <u>Id.</u> (citations omitted).  Thus, if an action alleges a violation of a term of a labor contract, "federal labor law preempts any local law purporting to define the meaning or delineate the scope of a labor contract provision."  <u>Id.</u> at 1342.  "This assures uniformity of interpretation of collective bargaining agreements and promotes harmonious and consistent resolution of labor contract disputes."  <u>Id.</u> (citations omitted).  The preemptive effect of § 301 is not limited to actions alleging violations of labor contracts, however.  Section 301 preempts all actions "where resolution of the action requires interpretation of a collective bargaining agreement."  <u>Id.</u>  As explained by the United States Court of Appeals for Eighth Circuit in <u>Vacca</u>, however, the preemptive effect of § 301 is not all encompassing.

> This does not mean that all actions commenced by an employer by an employee covered under a labor contract must be brought under § 301.  Such an employee may assert a state law claim against his employer if resolution of that claim does not require interpretation fo the terms of the union contract.  If resolution of the claim, however, is "substantially dependent" on the terms of the union contract, or if evaluation fo the state law claim is "inextricably intertwined with consideration of the terms of the labor contract," it is preempted by § 301.  The complete factual background of the case must be examined against all elements of the state law claim, including defenses, to determine whether the terms of the union contract "come into play."

<u>Id.</u> at 1342 (internal citations omitted).  As explained by the Supreme Court in <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 211-213 (1985):

> Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law.  Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract.  Nor is there any suggestion that Congress, in

adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the preemptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

Therefore, state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted by those agreements.

The focus must be, therefore, whether the state law cause of action, as applied in the current case:

[C]onfers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contractual relationship, that law is preempted.

Id. at 213.

A two-step analysis has been endorsed by the United States Court of Appeals for the Eighth Circuit in determining whether plaintiffs' IWPCL claim is preempted by section 301.

In applying the section 301 preemption doctrine, we begin with "the claim itself," *see Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006), and apply a two-step approach in order to determine if the claim is sufficiently "independent"

> to survive section 301 preemption, *see Bogan*, 500 F.3d at
> 832. First, a "state-law claim is preempted if it is 'based on'
> [a] . . . provision of the CBA[,]" meaning that "[t]he CBA
> provision at issue" actually sets forth the right upon which the
> claim is based. *Id.* Second, section 301 preemption applies
> where a state-law claim "is 'dependent upon an analysis' of the
> relevant CBA," meaning that the plaintiff's state-law claim
> requires interpretation of a provision of the CBA. *Id.*

Williams v. National Football League, 582 F.3d 863, 874 (8th Cir. 2009). "[T]he crucial inquiry is whether 'resolution of a state-law claim depends upon the meaning of a [CBA].'" Miner v. Local 373, 513 F.3d 854, 865 (8th Cir. 2008) (quoting Lingle v. Norge Div. Of Magic Chef, Inc., 486 U.S. at 399, 405-06 (1988)).

With respect to the first step of the two-step analysis, Plaintiffs' claim under the IWPCL seeks the recovery of unpaid wages under the IWPCL. The IWPCL is designed to facilitate the collection of wages owed to employees. Jeanes v. Allied Life Ins. Co., 300 F.3d 938 (8th Cir. 2002). See also Kartheiser v. American Nat. Can Co., 271 F.3d 1135, 1136 (8th Cir. 2001) ("The purpose of the statute is uncomplicated and direct: 'to facilitate collection of wages by employees.'") (quoting Educational Tech., Ltd. v. Meinhard, 2001 WL 488088 *8 (Iowa Ct. App. 2001). Plaintiffs' claim is not premised on a right provided by the CBA. To the contrary, plaintiffs claim that is that defendants' violated the IWPCL by failing to pay plaintiffs for all hours worked. Thus, the dispositive inquiry becomes that under the second step of the analysis, i.e., whether plaintiffs' IWPCL claim requires either the interpretation or construction of the CBA, or merely reference to the CBA.

In support of its preemption argument, defendant notes that the CBA governs plaintiffs' and defendants' rights and responsibilities with respect to hours worked, wages, and overtime, and mandates binding arbitration to resolve disputes over its meaning and application, and argues that plaintiffs' IWPCL claim is preempted by the LMRA because it is founded on substantive rights under the CBA, depends on an interpretation and

application of the CBA's terms, and requires resolution through the bargained-for remedial mechanism. Defendant specifically cites Article V, "Hours of Work and Overtime," in the CBA, i.e.:

> 5.2 One and one-half (1 ½) times the regular rate of pay shall be paid for all hours worked in excess of forth (40) hours in any one week and in excess of eight (8) in one day.
>
> 5.3 . . . [O]ne and one-half (1 ½) times the hourly rate [shall be] paid for all hours worked on Saturday, except that those employees who are normally required to work on Saturday shall be paid one and one-half (1 ½) times their hourly rate when required to work their designated day in lieu of Saturday.
>
> 5.4 Two (2) times the hourly rate shall be paid for all hours worked on Sunday, except that those employees who are normally required to work on Sunday shall be paid two (2) times their hourly rate when required to work their designated day in lieu of Sunday.
>
> 5.5 Double the regular rate of pay shall be paid for all hours worked on holidays by employees, except employees who are normally scheduled to work on holidays shall be paid two (2) times their hourly rate when required to work the day designated as their day in lieu of the holiday.

Further, Appendix A of the CBA sets forth a wage schedule by position/category, Article XIV establishes annual wage rate and cost of living increases, and Article X establishes a mandatory "Grievance Procedure" to be followed in the event of dispute involving the substantive terms of the CBA.

The court finds that the CBA provisions cited by defendants only become relevant in the event damages must be computed. Reference to the CBA for this limited purposes does not support preemption. Livadas v. Bradshaw, 512 U.S. 107, 124-25 (1994) (holding there was no preemption under section 301 since the wage rate provision in the CBA only

had to be referenced to calculate damages). See also Trustees, 450 F.3d at 330 ("An otherwise independent claim will not be preempted if the CBA need only be consulted during its adjudication.").

Further, the court would not properly consult the CBA in order to resolve the plaintiffs' IWPCL claim. Rather, the court would compare the facts as developed with the requirements of the IWPCL to determine whether the state statute had been violated. Such a claim is not preempted by section 301. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 266 (1994) (holding that strictly factual questions about an employer's conduct do not require interpretation of a term of a CBA). Section 301 does not grant parties to a CBA license to contract for what is illegal under state law. Lueck, 471 U.S. at 211-12.

In conclusion, plaintiffs' IWPCL claim is based on Iowa law and the defendants' conduct. It is not based on the CBA. Plaintiffs' IWPCL claim does not depend upon an interpretation or construction of the CBA. Thus, plaintiffs' IWPCL claim is not preempted.

Upon the foregoing,

**IT IS ORDERED THAT** defendants' motion to dismiss is **DENIED**.

Dated this 13th day of January, 2012.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA